IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BONILLA-SANTIAGO, et al., | CASE NO. 1:20-cv-02524-TSC |
| Plaintiffs, | |
| v. | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| BLB PRIVATIZED HOUSING, LLC, et al., | |
| Defendants. | |

## INTRODUCTION

After the concessions made by Plaintiffs in their opposition brief, there remains a single count for the Court to address: Plaintiffs' Count 1 for Negligence/Premises Liability. Plaintiffs' only remaining claim is that Defendants were negligent in breaching a duty "to conduct pest control." However, this duty only arose out of the Lease between BLB Privatized Housing, LLC and Sgt. Bonilla-Santiago; therefore, this count is barred. Further, Plaintiffs cannot establish a breach of the applicable standard of care, nor do they establish any cognizable damages arising from such a breach. The Court should grant Defendants' motion for summary judgment and dismiss all of Plaintiffs' remaining claims with prejudice.

In the event the Court determines some portion of this case survives summary judgment, then Plaintiffs may only proceed against the landlord Defendant (BLB Privatized Housing, LLC). All remaining counts must be dismissed against the remaining Affiliate Defendants who had no contractual relationship with the Plaintiffs and owed no duty to the Plaintiffs.

I. **PLAINTIFFS' SOLE REMAINING COUNT CANNOT STAND FOR REASONS ALREADY EXPLAINED BY THIS COURT.**

The Court has already held that the Plaintiffs cannot pursue tort claims that are predicated on the same facts and legal duties covered by their breach of contract claim. Dkt. No. 44 ("Br.") at 14. Faced with that reality, Plaintiffs now abandon two of their three remaining counts (for breach of contract and breach of implied warranty of habitability), leaving only their claim for negligence. Dkt. No. 45 ("Opp.") at 5. Plaintiffs argue that this change in footing means their negligence claim is now freestanding and not duplicative of their breach of contract claim. *Id.* at 6-7. But Plaintiffs misunderstand the Court's prior ruling and the law. Their negligence claim does not fail merely because it was duplicative of their breach of contract claim (which it was); their negligence claim fails because the duty "to conduct pest control" that Plaintiffs allege was breached is a duty *that arose out of the Lease*. Under the Court's prior Order and the law, Plaintiffs' remaining negligence count must be dismissed.[1]

In their opposition, Plaintiffs advance the same two arguments that the Court previously rejected in dismissing Plaintiffs' other tort claims.

Plaintiffs first argue that this case is distinguishable from the controlling *Choharis* decision because "this case involves personal injuries stemming from the Defendants' breach in their duties to conduct pest control," and "the personal injuries and emotional distress damages exist even if the lease did not." Opp. at 8. Plaintiffs assert that "[t]he negligence claim is [] separable from the breach of contract claim in the damages it seeks." *Id.* The Court has already rejected that argument

---

[1] Although the Court's prior holding applied to Counts 2, 6, and 7 for Negligent Repair, Negligent Misrepresentation and Intentional Misrepresentation and Fraud, the reasoning behind the Court's holding is the law-of-the-case and applies here as well. Plaintiffs' opposition never addresses Defendants' law-of-the-case argument. *Compare* Br. at 14 (raising issue) *with* Opp. at 6-8 (failing to address law-of-the-case doctrine while making the same two arguments previously rejected by the Court).

2

as "unavailing." Dkt. No. 31, Order on MTD, at 8. "The fact that the alleged injuries were physical and psychological *is irrelevant* because the basis of the alleged tortious injury must be 'separable from the terms of the contract' …." *Id.* (emphasis added). The Court should reject again Plaintiffs' argument that the nature of their alleged damages saves their tort claim.

Second, Plaintiffs argue that their negligence claim can proceed because the landlord had an obligation to provide pest control services "in accordance with D.C. regulations, the Lease, and even the pest control policies in place at JBAB." *See* Opp. at 8-9 (citing Br. at 15). This argument does not save Plaintiffs' negligence claim because the only duty to provide pest control services to the Plaintiffs arose from the Lease. If the Lease did not exist, then BLB Privatized Housing, LLC would have no duty to the Plaintiffs to conduct pest control services: JBAB's general policies regarding how to perform pest control, and D.C.'s regulations governing landlord-tenant relationships, only apply *because* Plaintiffs executed the Lease and entered into a landlord-tenant relationship with BLB Privatized Housing, LLC. If that contractual relationship did not exist, the duties at issue would not exist either – precisely the situation that forecloses a tort claim under *Choharis*.

Moreover, the Court has already rejected Plaintiffs' argument with respect to the D.C. municipal regulations. In response to Defendants' motion to dismiss, Plaintiffs argued that their tort claims stemmed from a novel "extra-contractual duty arising from D.C. Municipal Regulations" related to extermination services. Dkt. No 31, Order on MTD, at 9. In rejecting this argument, the Court noted "even if [D.C.] regulations generally provide a basis for asserting a tort claim, Plaintiffs have not pointed to any legal authority suggesting that the regulations allow them to side-step the rule set forth in *Choh[a]ris*." *Id.* The Court's prior ruling applies with equal force now.

Plaintiffs' negligence count cites a single D.C. regulation as the alleged source of a duty (D.C.M.R. 14-805), but neither the Complaint nor Plaintiffs' opposition brief explains which of the five subsections of that regulation Defendants allegedly violated, how they allegedly violated it, or why any such violation (assuming one occurred) would permit the Plaintiffs to avoid the rule in *Choharis*.  In a similar situation this Court has found such a passing reference to a regulation insufficient and dismissed the plaintiff's negligence count outright.  *Hawthorne v. Rushmore Loan Mgmt. Servs., LLC*, 2021 WL 3856626, *10 (D.D.C. Aug. 30, 2021) ("Plaintiff's invocation of the regulation does nothing to advance her claim because neither her complaint nor her opposition brief identifies any particular provision of [the statute] or the implementing regulation that gives rise to a duty of care.")

Plaintiffs cite no case, and Defendants' research has uncovered none, in which a court has held that D.C.M.R. § 14-805 imposes an independent duty that supports a common law negligence claim.  The regulation Plaintiffs rely on, which is in the D.C. Housing Code, is enforced by the D.C. Department of Buildings (and before that, the Department of Consumer and Regulatory Affairs or "DCRA") through notices of violations or infractions.  *See* D.C. Mun. Regs. tit. 14 § 105.  The only judicial opinion Defendants have located involving violations of D.C.M.R. § 14-805 is *In re Stancil*, No. 01-02220, 2005 WL 3036647 (Bankr. D.D.C. Nov. 7, 2005).  There, the DCRA had issued at least 25 notices citing more than 150 housing code violations, including Section 14-805, over a three-year period, which the court held amounted to a breach of the implied warranty of habitability, not negligence.[2]  The only regulation cited by Plaintiffs, D.C.M.R. § 14-805, does not give rise to a common law duty to support a negligence claim.

---

[2]  Plaintiffs have abandoned their claim for breach of the warranty of habitability (Opp. at 5) because it is barred by the Release they previously signed (Br. at 13-14).

Because there existed no duty to provide pest control services in Plaintiffs' former home independent of the Lease, Plaintiffs' negligence claim must be dismissed. *See Ruiz v. Millennium Square Residential Ass'n*, 2022 WL 296200 (D.D.C. Feb. 1, 2022) ("In essence, the Complaint seeks to enforce the [contract] through the tort of negligence. This it cannot do."); *Jones v. NVR Incorporation*, No. CV 20-453 (CKK), 2020 WL 2064085, at *6 (D.D.C. Apr. 29, 2020) ("In order to state a negligence claim, Plaintiff must establish a duty or obligation imposed by law independent of that arising out of the contract itself.") (internal quotation marks omitted).

## II. PLAINTIFFS CANNOT ESTABLISH THE ESSENTIAL ELEMENTS OF A NEGLIGENCE CLAIM.

Even if Plaintiffs could somehow establish a duty to provide pest control services independent of the Lease, Plaintiffs' negligence claim still fails as a matter of law because Plaintiffs cannot establish essential elements of their claim.

"[A] plaintiff in a negligence action bears the burden of proof on three issues: [i] the applicable standard of care, [ii] a deviation from that standard by the defendant, and [iii] a causal relationship between that deviation and the plaintiff's injury." *Williams v. Aviles*, 2022 WL 2643559, at *5 (D.D.C. July 8, 2022) (internal quotation marks omitted). "When the standard of care is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror, the plaintiff ***must*** prove with expert testimony ***both*** the standard of care and that the defendant failed to adhere to it." *Id.* (emphases added) (internal quotation marks omitted).

On the undisputed facts before the Court, Plaintiffs cannot meet their burden on any of the three essential elements of their negligence claim.

### A. Plaintiffs Cannot Establish the Applicable Standard of Care without Expert Testimony.

Plaintiffs allege that Defendants owed a duty to conduct pest control services, but Plaintiffs have not put forth the standard of care required to comply with that duty. To do so, Plaintiffs

needed to designate an expert in the field of pest control services, which they did not. Indeed, Plaintiffs failed to designate an expert on any topic.

"The requirement of expert testimony has been applied [] broadly to a variety of situations," with a "substantially smaller number of cases falling within the common knowledge exception." *Griggs v. Wash. Met. Area Transit Auth.*, 2002 WL 31174533, at *4 (D.D.C. 2002) (quoting *Dist. of Columbia v. Hampton*, 666 A.2d 30, 35-36 (D.C. 1995)). "[T]he District of Columbia Court of Appeals has required plaintiffs to present expert testimony regarding standards of care for relatively common situations." *Id.* For example, D.C. courts have required expert evidence on the standard of care applicable to the installation of a furnace,[3] the installation of a handrail,[4] nightclub security,[5] adequate lighting,[6] the inspection/abatement of a potentially hazardous tree,[7] and ground-cushioning at a playground.[8]

Although it appears that no D.C. court has addressed this issue in the context of pest control standards, courts in other jurisdictions have required expert evidence in such cases. *See e.g.*, *Davis v. Lafayette C. Greischar Living Trust*, 308 P.3d 31 (Ct. App. Kan. 2013) ("[T]he standard of care required of a termite inspector in Kansas [is] technical and outside the ordinary experience and common knowledge of a jury."); *Walker v. Arrow Exterminators, Inc.*, 1999 WL 722639, at *3 (Ct. App. Tenn. 1999) (affirming summary judgment in favor of defendant where plaintiff failed to adduce expert evidence of standard of care applicable to termite inspector).

---

[3] *Williams v. Aviles*, 2022 WL 2643559 (D.D.C. July 8, 2022).
[4] *Wise v. United States*, 145 F. Supp. 3d 53 (D.D.C. 2015).
[5] *Novak v. Capital Mgmt. & Dev. Corp.,* 570 F.3d 305 (D.C. Cir. 2009).
[6] *Briggs v. Wash. Metro. Area Transit Auth.*, 481 F.3d 839 (D.D.C. 2007).
[7] *Katkish v. District of Columbia*, 763 A.2d 703 (D.C. Ct. App. 2000).
[8] *Messina v. District of Columbia*, 663 A.2d 535 (D.C. Ct. App. 1995).

"The inability to establish a standard of care for an issue beyond the ken of the average person is fatal to a lawsuit." *Griggs*, 2002 WL 31174533 at *5. Here, the standard of care applicable to a landlord's pest control efforts is "beyond the ken" of the average juror. Because the Plaintiffs have provided no expert evidence on the standard of care, their negligence claim must be dismissed.

### B. Plaintiffs Cannot Prove a Deviation from the Standard of Care.

Without expert evidence to establish the standard of care applicable to pest control measures, Plaintiffs also cannot demonstrate a deviation from that standard, because a jury would have nothing to measure the Defendants' behavior against. Construing the evidence in the most favorable light for Plaintiffs, the evidence in this case is that Plaintiffs first complained of rodents in October or November of 2017, and that the landlord eliminated the problem within a matter of weeks. While Plaintiffs claim that there was a delay in the landlord's pest control efforts,[9] Plaintiffs have provided no evidence that an alleged delay, even if proven, would amount to a breach of the applicable standard of care.

Indeed, *Defendants'* expert witness concluded that the Defendants did, in fact, comply with "best practices (or standard of care) of the pest management commercial industry and appropriate property management practices." Defendants' Ex. 18, Dkt. No. 44-19 at 34 of 122. Because Plaintiffs have no expert to refute this testimony, Plaintiffs merely "disagree" and offer their subjective, lay opinions that the Defendants should have acted more quickly. Dkt. No. 45-3,

---

[9] Plaintiffs' own testimony is inconsistent as to the length of the alleged delay. Mrs. Bonilla testified that she first saw a rodent in the last week of October 2017 going into the first week of November 2017. Dkt. No. 45-5, D. Bonilla Testimony at 31:11-15, 37:15-38:4. Meanwhile, Sgt. Bonilla-Santiago testified that he lodged multiple complaints in October 2017 (Dkt. No. 45-7 at 56:11-57:10), which is inconsistent with Mrs. Bonilla's testimony, the Complaint (Dkt. No. 23 ¶ 38), and the Defendants' documentary evidence (SOF ¶¶ 22-23).

Defendants' Response to Rule 56.1 Statement of Facts ("Opp. SOF") at ¶ 30.  The Plaintiffs' lay opinions are not admissible[10] and, consequently, Plaintiffs cannot establish this essential element of their claim.

### C. Plaintiffs Have No Cognizable Damages Arising from the Alleged Breach.

As noted in Defendants' opening brief, there are only two categories of damages at issue: (i) housing costs (i.e., rent), and (ii) unverified "emotional distress damages" in an amount Plaintiffs did not come up with but acknowledged was determined *through advice of their legal counsel*, without any supporting medical diagnoses or expert testimony, either damages or medical. Br. at 16-17.

As to housing costs, Plaintiffs do not dispute these costs are barred by the Release they previously signed.[11]  "It is well established that if a [party] fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded." *Wilkins v. Jackson*, 750 F. Supp. 2d 160, 162 (D.D.C. 2010); *accord Mosleh v. Howard University*, 2022 WL 898860, at *15 (D.D.C. 2022) (plaintiff "conceded his claim by failing to respond to [the defendant's] arguments" in summary judgment motion).

As to the emotional distress damages (claims of $500,000 per plaintiff),[12] there are multiple and insurmountable barriers to recovery of any such damages.

The material facts are not in dispute:

---

[10] Federal Rule of Evidence 701 prohibits lay witness testimony that is "based on scientific, technical, or other specialized knowledge."

[11] Plaintiffs argue that Minor Child A.B. was not a party to the release. Opp. at 5. That is incorrect – the parents released claims on behalf of themselves and their "heirs," which includes their child A.B., which they do not dispute. Opp. SOF ¶ 34. But the issue is moot with respect to the housing costs because Minor Child A.B. was not responsible for rent payments and in this lawsuit is seeking only "emotional distress damages."

[12] Plaintiffs are no longer seeking $500,000 in damages for Minor Child K.B. Opp. at 4.

- Plaintiffs do not claim any physical injuries as a result of Defendants' alleged conduct (Opp. SOF ¶¶ 38-39);

- Plaintiffs were never diagnosed with any mental health disorders and never sought treatment for any mental health conditions related to rodents (*id.* ¶¶ 44, 53, 54);

- Plaintiffs' alleged injuries subsided when their alleged exposure to rodents subsided (*id.* ¶¶ 55, 60, 61); and

- Plaintiffs have not designated any expert on this or any other topic (*id.* ¶ 40).

Without expert testimony from mental health professionals, there is no way for the Plaintiffs to prove by a preponderance of the evidence that an alleged delay in providing pest control services was the proximate cause of the Plaintiffs' alleged mental injuries.

Additionally, even if the Plaintiffs could prove causation, D.C. law does not permit the recovery of mental pain and suffering damages under these circumstances. Such damages are recoverable only in exceedingly narrow circumstances, where (i) the plaintiff was either in the "zone of danger" or in a "special relationship" with the defendant, *and* (ii) the damages at issue are "serious," "verifiable," and "acute, enduring, or life-altering." Br. at 17-20. Plaintiffs' opposition fails to make a plausible case that any of these essential elements are met.

With respect to the "zone of danger" test, Plaintiffs argue a zone of danger was somehow created because they were "inside the house with the rodents," and "[t]hey could see and hear them." Opp. at 14. They do not explain how this created a "zone of danger" and do not allege that any of them ever had physical contact with a rodent – to the contrary, they each admit that they did not suffer any physical injury. Minor Child A.B. testified that she never saw or heard a rodent in the house, but rather was told about them by her mother. Opp. SOF ¶ 48. Nor do Plaintiffs cite a single case, in any jurisdiction, where unwanted rodents in a household were held to create a

9

"zone of danger" – they ask this Court to be the first, without providing the Court any evidence to support such a sweeping expansion of the "zone of danger" test.

Regarding the "special relationship" test, Plaintiffs must prove that Defendants had "an obligation to care for the plaintiff's emotional well-being or the plaintiff's emotional well-being [was] necessarily implicated by the nature of the defendant's undertaking to or relationship with the plaintiff, and serious emotional distress is especially likely to be caused by the defendant's negligence." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 792 (D.C. 2011). Plaintiffs essentially ignore this requirement of *Hedgepeth*. They do not cite a single case, in this or any other jurisdiction, holding that a landlord-tenant relationship creates an "obligation to care for the plaintiff's emotional well-being," and Plaintiffs acknowledge that the single on-point case in this jurisdiction held the opposite. Opp. at 15 (citing *El v. Oparaugo*, 2022 WL 2104484, at *4 (D.D.C. 2022)). Plaintiffs' only attempt to distinguish the *El* decision is their argument that "the rodent infestation was persistent and disturbing to the Plaintiffs" in this case (Opp. at 15), but this misses the point. The facts underlying the claim at issue are irrelevant – the focus of the inquiry is the nature of the *relationship*, not the nature of the *claim*. Again, Plaintiffs ask this Court to hold that every landlord has a "special relationship" with its tenants that can support an award of mental anguish damages without any physical injury.

Finally, on the undisputed facts the Plaintiffs' alleged emotional distress injuries do not rise to the level of actionable damages under the law. *See Canty v. D.C.*, 2022 WL 3646312, at *7 (D.D.C. Aug. 24, 2022) (allegations of "not being able to sleep, severe depression and more" did not meet requirement of "serious and verifiable emotional distress"); *see also id.* (citing *Sibley v. St. Albans School*, 134 A.3d 789, 798 & n.3 (D.C. 2016) (claim of being "emotionally traumatized" not sufficiently serious and verifiable)); *Hawkins v. Washington Metro. Area Transit Auth.*, 311 F.

10

Supp. 3d 94, 108 (D.D.C. 2018) (allegations that plaintiffs were very frightened, unable to feel safe, unable to trust, and "continue[d] to suffer" because an incident "caused emotional and psychological trauma," even construed in favor of plaintiffs, "do not allege the serious, physical manifestations of emotional distress required to state a claim.").

Sgt. Bonilla-Santiago complained only of stress at work and worry for his family, which abated after the pest issue was resolved. Opp. SOF ¶ 55. Mrs. Bonilla complained only of migraines (which she suffered from before she moved into the Residence), dizziness and the stress of cleaning. *Id.* ¶¶ 59-63. Minor Child A.B. testified that she has nightmares about rodents (and other nightmares unrelated to this case),[13] which are not alleged to incapacitate her or seriously impair her daily life. *Id.* ¶¶ 44-52. And the claims for Minor Child K.B. have been abandoned entirely. No mental health professional has verified the alleged mental injuries (*id.* ¶¶ 44, 53, 54) and no expert witness is designated on that topic (*id.* ¶ 40). Plaintiff was unable to testify how she arrived at the amount of mental distress damages other than "talking through advice with our legal counsel" (Dkt. 44-9 at 116:7-8) and Plaintiffs have designated no damages expert (*id.* ¶ 40). This means it will be impossible for the Plaintiffs to prove emotional distress damages at trial, because a jury would have nothing to rely on but speculation and guesswork. *Trustees of Univ. of D.C. v. Vossoughi,* 963 A.2d 1162, 1175 (D.C. 2009) (award of damages "may not be based on speculation or guesswork").

---

[13] According to Mrs. Bonilla, a doctor advised her that A.B.'s nightmares were probably caused by her speech impediment and resulting frustration with her inability to communicate. Opp. SOF ¶ 53. Though Plaintiffs purportedly "dispute" Defendants' characterization of this testimony, they admit, in their own words, that "the doctors did not want to refer A.B. to therapy because they believed her problems to be related to speech." *Id.* Plaintiffs are not medical professionals, and their disagreement with the opinions of A.B.'s treating physicians does not raise a dispute of material fact.

Drawing all inferences in the Plaintiffs' favor, in sum they experienced stress and anxiety as a result of encountering rodents in their residence. But stress and anxiety, without more, cannot sustain a claim for mental pain and suffering under D.C. law.

### III. THERE IS NO BASIS TO PIERCE THE CORPORATE VEIL.

As explained in Defendants' opening brief, Plaintiffs' Lease was with the landlord Defendant BLB Privatized Housing, LLC and all of the claims arise from that contractual relationship. There is accordingly no basis to maintain Plaintiffs' suit against the Affiliate Defendants: BLB Property Managers, LLC; Hunt Military Communities Management, LLC; and Hunt Companies, Inc.

In their opposition, Plaintiffs finally concede that Hunt Military Communities Management, LLC should be dismissed, but attempt to maintain their suit against the other two Affiliate Defendants, arguing that there is "unity of ownership and interest" among the companies and that the corporate form was utilized to perpetrate a wrong of fraud. Plaintiffs again provide no evidence to support either argument.

With respect to unity of ownership and interest, Plaintiffs argue that (i) certain individuals are employees or officers of multiple Defendants, and (ii) the landlord (BLB Privatized Housing, LLC) and the property manager (BLB Property Managers, LLC) sometimes use the Hunt logo and Hunt email domain name. Opp. at 16-17. Even accepting these allegations as true, this does not remotely establish unity of ownership of interest sufficient to pierce the corporate veil. "Courts in this district have specifically held that the joint use of trademarks and a common marketing image, along with shared executives between two companies, are not sufficient to establish alter ego status." *C.I. Energia Solar, S.A. v. Ranger Specialized Glass*, 2019 WL 1330852, at *3 (D.D.C. Mar. 25, 2019)) (cleaned up).

12

Plaintiffs do not dispute that the landlord Defendant "maintains its own bank account, separate from the other defendants," that it "maintains separate finances from and does not comingle assets with the other defendants," and that it "has a different membership from the other LLC defendants and from the board of directors of Hunt Companies, Inc." Dkt. No. 45-3, ¶¶ 65-67. This is the opposite of unity of ownership and interest – the companies have different owners, management, and interests. That the Defendants share some employees and an email domain name does not alter the fact that they are distinct corporate entities who are entitled to the protections of the corporate form.

As Plaintiffs correctly note, to prevail on their veil-piercing claims they must provide "*evidence* that the corporate form was used to perpetrate" a fraud or wrongdoing – not merely bald allegations and argument unsupported by evidence. Opp. at 17 (emphasis added). As an initial point, Plaintiffs do not even attempt to argue that the alleged wrongdoing at issue – a delay in exterminating rodents – was facilitated or exacerbated by some abuse of the corporate form. More importantly, Plaintiffs produce no evidence whatsoever of fraud or wrongdoing. Instead, Plaintiffs merely speculate that "the Defendants disregard the corporate form when it is convenient for them, trading under the names Hunt Military Communities or Hunt Companies, perhaps to save money, or perhaps for the value of using a reputable name." Opp. at 18. Plaintiffs cite no evidence to support this pure conjecture, and their spurious arguments do not show abuse of the corporate form to perpetuate a fraud or wrongdoing.

Plaintiffs' newfound reliance on "agency liability" fares no better. First, Plaintiffs' negligence count (the only remaining count) does not allege that any of the Defendants was the agent of another Defendant, it alleges that each Defendant had an *independent* "duty to exterminate

13

pests such as rodents and insects." Dkt. No. 23 ¶ 56. Plaintiffs "cannot amend [the complaint] by way of opposition brief." Dkt. No 31, Order on MTD, at 9.

Second, Defendants do not dispute that Defendant BLB Property Managers, LLC acted as the agent of Defendant BLB Privatized Housing, LLC for purposes of property management services including the pest control at issue here. But this means that the landlord (BLB Privatized Housing, LLC) may be held liable for any error or omission that its agent made in the scope of the agency. *See generally* Restatement (Third) Of Agency § 7.03 (2006). It is not, however, a basis for imposing independent liability on the agent, BLB Property Managers, LLC. While a party is liable for its own torts (that is, torts the party would have been liable for even if an agency relationship did not exist), the existence of an agency relationship does not provide an independent basis for assessing tort liability against an agent. *Id.* § 7.02 ("An agent is subject to tort liability to a third party harmed by the agent's conduct only when the agent's conduct breaches a duty that the agent owes to the third party.").

Finally, Plaintiffs also attempt to resuscitate their claim against Defendant Hunt Companies, Inc. by characterizing the landlord as an "agent" of Hunt Companies, Inc. But this case is nothing like *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 19 (D.D.C. 2008), cited by Plaintiffs, in which there was affirmative evidence that the parent company exercised "uncompromising controls" over its subsidiary. Here, the only evidence Plaintiffs offer is the fact that certain individuals are employed by both Hunt Companies, Inc. and the other Defendants, and one of those individuals "signed the contract for pest control services." Opp. at 19. The innocuous fact that two separate companies share employees cannot support a finding that BLB Privatized Housing, LLC was controlled by, and acting as an agent of, the Hunt Companies, Inc., when

14

discharging its duties as landlord to the Plaintiffs. Therefore, there is no basis for imposing agency liability on Hunt Companies, Inc.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment and dismiss all remaining claims with prejudice.

Dated: May 12, 2023         Respectfully submitted:

/s/ *Laura B. LoBue*

Laura B. LoBue (DC Bar # 977936)
Jeffrey A. Knight (DC Bar # 460172)
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street, NW
Washington, DC  20036
Tel: (202) 663-8000
Fax: (202) 663-8007
laura.lobue@pillsburylaw.com
jeffrey.knight@pillsburylaw.com

*Counsel for Defendants*