UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ODE E. BONILLA-SANTIAGO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BLB PRIVATIZED HOUSING, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 20-cv-2524 (TSC) |

**MEMORANDUM OPINION**

Plaintiffs, a military family, experienced a rodent infestation while living at a townhouse owned and managed by a government contractor. After being relocated to another residence, Plaintiffs sued their landlord and other related entities for violations of tort and contract law arising from the infestation. Defendants have now moved for summary judgment on Plaintiffs' claims for negligence, breach of contract, and breach of the warranty of habitability, ECF No. 44.

Having considered the record and the parties' briefs, the court will GRANT Defendants' Motion.

**I.   BACKGROUND**

Plaintiffs are Sgt. Ode Bonilla-Santiago, a member of the U.S. Marine Corps, his wife, Dayanara Bonilla, and their two minor children. Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J., ECF No. 44-1 ¶¶ 14, 16 ("Statement of Facts"[1]). While Sgt. Bonilla-Santiago was stationed at Marine Barracks in Washington, D.C., the family lived in a

---

[1] Plaintiffs responded to Defendants' statement of facts, agreeing with some and disagreeing with others. *See* Pls. Statement of Disputed Material Fact, ECF No. 45-3. The court relies only on undisputed facts.

townhouse in the Hooe Terrace neighborhood for approximately two and a half years. *Id.* ¶¶ 14–16. The Department of Defense contracted with Defendant BLB Privatized Housing, LLC, to develop, own, maintain, and manage the residence and other military family housing at the military base. *Id.* ¶ 1.

Shortly after moving in, Plaintiffs noticed rodents in the kitchen and heard them in the vents. *Id.* ¶¶ 22–23. They placed multiple work orders, to which Defendants responded. *Id.* Fortunately, from December 2017 to October 2018, Plaintiffs "did not have any issues with rodents." *Id.* ¶ 26. The reprieve did not last, however. Plaintiffs again reported issues with rodents in November 2018 and requested to move to another residence. *Id.* ¶ 28. Defendants performed additional pest control services, *id.* ¶¶ 29–30, and eventually relocated Plaintiffs to a different residence, *id.* ¶ 31.

Plaintiffs filed this suit on September 9, 2020, Compl., ECF No. 1, against BLB Privatized Housing, LLC, BLB Property Managers, LLC, Hunt Companies, Inc., Hunt MH Shared Services, LLC, and Hunt Military Communities Management, LLC ("Hunt Military"), Am. Compl., ECF No. 23 ¶¶ 7–11. Plaintiffs alleged eight counts of tort and contract claims arising from the rodent infestation at the residence. *Id.* ¶¶ 55–120. Defendants moved to dismiss the Amended Complaint, ECF No. 25, and the court granted the motion in part and denied it in part, Mem. Op., ECF No. 31 at 14. The court dismissed Counts 2, 5, 6, 7, and 8, leaving Counts 1, 3, and 4 remaining. *Id.* at 12–14. Plaintiffs appealed, ECF No. 34, but the D.C. Circuit dismissed their appeal for failure to prosecute, ECF No. 39-1. Following discovery, Defendants moved for summary judgment on all remaining counts. Mot. for Summ. J., ECF No. 44 ("Motion").

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if "a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). The party seeking summary judgment bears the burden to provide evidence showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.    ANALYSIS

### A.     The Release of Claims

Defendants contend that Plaintiffs signed a release barring them from recovering on all remaining claims. Motion at 11–14. The release covers "any and all property-related (including both real and personal property, and tangible and intangible assets) claims, liabilities, demands, causes of action, damages, losses, costs, and expenses of any nature or kind . . . whether based on statutory or regulatory authority, common law, contract, tort or other basis," but carves out "claims, if any, solely with respect to personal injury." Agreement & Release of Claims, ECF No. 44-21 at 1–2. In Defendant's view, Plaintiffs' claims are not "with respect to personal injury" because they allege mental and emotional, not physical, harms and seek refund of rent. Motion at 11–12. Plaintiffs concede that the release bars them from seeking a refund of rent, but argue that the "personal injury" exception covers mental and emotional distress. *See* Pls.' Opp'n to Defs.' Mot. for Summ. J. & Mem. of P. & A. in Supp., ECF No. 45 at 5–6 ("Opp'n")

(acknowledging that "they are only claiming emotional distress damages and damages for the breach of the lease," but arguing that their claims for emotional distress damages are not covered by the release).

The release does not define "personal injury," but provides that it "shall be interpreted . . . under the laws of the State of Illinois."  Agreement & Release of Claims at 3; *contra* Opp'n at 6 (citing D.C. case law).  Under Illinois law, "personal injury has long been understood to include nonphysical as well as physical injuries," *Naqvi v. Rossiello*, 746 N.E.2d 873, 877 (Ill. App. Ct. 2001), such as "mental distress," *id.* at 879.

That interpretation is sound.  Dictionaries define "personal injury" to include mental and emotional distress.  *E.g.*, Personal Injury, *Black's Law Dictionary* (7th ed. 1999) ("personal injury" includes "mental suffering"); Personal Injury, *Merriam-Webster's Online Dictionary* (last visited Mar. 5, 2024) ("personal injury" includes injuries to "mind, or emotions").  And the Supreme Court has acknowledged that "it is impossible to exclude the mental suffering in estimating the extent of the personal injury."  *McDermott v. Severe*, 202 U.S. 600, 612 (1906); *see Carey v. Piphus*, 435 U.S. 247, 263–64 (1978) ("[M]ental and emotional distress . . . is a personal injury familiar to the law.").

In sum, the release's "personal injury" carveout allows Plaintiffs to sue for mental and emotional harms as well as physical harms.  It therefore does not bar Plaintiffs' claims.

**B.     The Merits**

Defendants have moved for summary judgment on the remaining Counts 1, 3, and 4.  *See* Motion at 2 (seeking summary judgment on all remaining counts); *see* Mem. Op. at 12–13 (Counts 1, 3, and 4 remain).  In their opposition, Plaintiffs "concede that the Breach of Contract and Breach of Warranty of Habitability claims [Counts 3 and 4] may be dismissed," but argue

that the court should deny summary judgment on Count 1. Opp'n at 5–15. Plaintiffs also "concede that they cannot substantiate claims against Hunt Military." *Id.* at 5.

"Generally, a court is justified in taking a litigant at [their] word when [they] explicitly concede[] one or more issues in response to a motion for summary judgment." *Fleming v. Medicare Freedom of Info. Grp.*, No. 15-cv-1135, 2019 WL 6330719, at *2 (D.D.C. Oct. 24, 2019) (citing cases); *see Wannall v. Honeywell, Inc.*, 775 F.3d 425, 430 (D.C. Cir. 2014) (refusing to address arguments plaintiff conceded at summary judgment). Thus, the court will not address Count 3, Count 4, or Defendant Hunt Military.

Defendants contend that they are entitled to summary judgment on Count 1 because Plaintiffs have not identified a legal duty separable from the lease agreement. Motion at 14. Plaintiffs cite two bases for Defendants' legal duty: the lease agreement and D.C. Municipal Regulation § 14-805. Opp'n at 8.

The D.C. Court of Appeals examined the relationship between tort and contract claims in *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080 (D.C. 2008). The *Choharis* court affirmed a grant of summary judgment to defendant on fraudulent and misrepresentation claims because plaintiff's allegations all "directly related to an obligation arising under" an insurance contract. *Id.* at 1088–90. The court found that "conduct occurring during the course of a contract dispute may be the subject of" a tort claim only "when there are facts separable from the terms of the contract upon which the tort may independently rest and when there is a duty independent of that arising out of the contract itself." *Id.* at 1089.

Applying *Choharis*, this court concluded that neither the lease agreement nor the D.C. municipal regulations, including D.C. Municipal Regulation § 14-805, create an actionable duty to support Plaintiffs' intentional and negligent misrepresentation claims. Mem. Op. at 7–10.

First, regarding the lease, the court held that the "basis of Plaintiffs' Complaint is that they contracted for a residence free of rodents," which they "did not receive," and therefore, "the alleged tortious injury" was not "separable from the terms of the contract." *Id.* at 8–9 (quoting *Choharis*, 961 A.2d at 1089). Second, regarding the D.C. municipal regulations, the court reasoned that "even if these regulations generally provide a basis for asserting a tort claim, Plaintiffs have not pointed to any legal authority suggesting that the regulations allow them to side-step the [*Choharis*] rule." *Id.* at 9.

These holdings are law of the case. Law of the case is a "family of rules embodying the general concept that a court involved in later phases of a lawsuit should not re-open questions decided by that court . . . in earlier phases." *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 697 (D.C. Cir. 2022) (citation omitted). Put another way, "the same issue presented a second time in the same case in the same court should lead to the same result." *Id.* (citations omitted). There are several exceptions to this rule, including intervening changes in law or clear error in the previous decision. *Id.* at 697–98. But no exception applies here, so the court will not reconsider its previous holdings.

Given those holdings, Defendants are entitled to summary judgment on Count 1. Like the misrepresentation and fraud claims, the basis of Plaintiffs' negligence claim is that Defendants were required to "use reasonable care to provide a residence free of rodents and other pests" including extermination. Am. Compl. ¶ 56. Thus, the allegations supporting the negligence claim are not distinct from a breach of the lease. *See* Mem. Op. at 8–9 (explaining that Plaintiffs claim they did not receive a "residence free of rodents").

D.C. Municipal Regulation § 14-805 cannot support the negligence claim any more than it could the misrepresentation claims.[2] As *Choharis* explained, "[t]he tort must stand as a tort even if the contractual relationship did not exist." 961 A.2d at 1089. That is not the case with D.C. Municipal Regulation § 14-805, which governs the relationship between an "occupant" and "the owner or licensee" of a "residential building," including by requiring the owner to provide extermination services if "an infestation of a single habitation is caused by failure of the owner or licensee to maintain a residential building in a rodent-proof or reasonably insect-proof condition." D.C. Mun. Regs. § 14-805. The lease agreement thus creates the legal relationship upon which the regulation depends—it makes Defendants "the owner or licensee" and Plaintiffs "[t]he occupant[s]." *Id.* Thus, Plaintiffs cannot "side-step" *Choharis* by pointing to D.C. Municipal Regulation § 14-805. Mem. Op. at 9.

Plaintiffs argue that *Choharis* "was fundamentally different" from this case. Opp'n at 7–8. First, Plaintiffs note that "there was no claim of premises liability" in *Choharis*. *Id.* at 7. Although Plaintiffs are correct that *Choharis* did not involve premises liability, there is nothing to indicate that its holding is cabined to the type of tort it addresses. Indeed, the D.C. Court of Appeals has applied *Choharis* to negligence claims like Plaintiffs'. *See Yerrell v. EMJ Realty Co.*, 281 A.2d 594, 598–99 (D.C. 2022) (affirming the trial court's dismissal of a negligence claim as duplicative under *Choharis*). And despite the fact that this court applied *Choharis* to

---

[2] Unlike in their intentional and negligent misrepresentation claims, Plaintiffs did cite D.C. Municipal Regulation § 14-805 in their Amended Complaint to support Count 1. *Compare* Mem. Op. at 9 ("Plaintiffs did not claim a breach of statutory duties in their Complaint, and they cannot amend by way of opposition brief."), *with* Am. Compl. ¶ 56 ("Amongst those duties is the duty to exterminate pests such as rodents and insects" (citing D.C. Mun. Regs. § 14-805)). That distinction makes no difference, however, because the court held in the alternative that *Choharis* foreclosed Plaintiffs' reliance on the D.C. municipal regulations to support a tort claim. Mem. Op. at 9–10.

Plaintiffs' intentional and negligent misrepresentation claims, Mem. Op. at 7–10, Plaintiffs do not argue that this holding is not law of the case or that an exception should apply.

Second, Plaintiffs argue that even if they had not signed a lease with Defendants, "they would be owed the same duty of reasonable care by the owners of the property to conduct pest control" under D.C. Municipal Regulation § 14-805 and the "pest control policies" at the military base. Opp'n at 8. Plaintiffs, however, cite no legal authority supporting their hypothetical that, even if they were not lawful tenants, Defendants would be obliged to provide pest control services. To be sure, D.C. Municipal Regulation § 14-805 applies to an "occupant," which is defined as someone with "actual possession of a habitation." D.C. Mun. Regs. §§ 14-199, 14-899. But Plaintiffs' argument assumes that Defendants would allow Plaintiffs to actually possess the residence without a contract. In D.C., "a landlord-tenant relationship . . . does not arise by mere occupancy of the premises; absent an express or implied contractual agreement . . . the occupier is . . . a 'squatter.'" *Crockett v. Deutsche Bank Nat'l Tr.*, 16 A.3d 949, 951 (D.C. 2011) (citation omitted). And "squatters" do not have any legal right to remain on the property, so landowners may evict them. *See* D.C. Code § 16-1103 (describing ejectment process for occupants in wrongful possession); *see also Molla v. Sanders*, 981 A.2d 1197, 1200 (D.C. 2009) (describing the ejectment process under D.C. Code § 16-1103).

Finally, Plaintiffs contend that their negligence claim is distinct from their contract claim "given that the damages" Plaintiffs seek "are separate from those available for breach of contract." Opp'n at 8. This court already considered and rejected this argument, however, holding that "[t]he fact that the alleged injuries were physical and psychological is irrelevant" so long as the "injuries stem from alleged violations of the terms of their lease." Mem. Op. at 8–9; *accord Ludwig & Robinson, PLLC v. BiotechPharma, LLC*, 186 A.3d 105, 115 (D.C. 2018)

(applying *Choharis* and explaining that parallel tort claims are barred if there is *any* overlap in damages that could be sought for breach of contract and the tort). And again, Plaintiffs do not contest that this holding is law of the case or argue that an exception should apply. Thus, *Choharis* and the court's prior holdings are controlling.[3]

## IV. CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion for Summary Judgment, ECF No. 44. An Order will accompany this Memorandum Opinion.

Date: March 8, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[3] Because the court holds that Count 1 should be dismissed under *Choharis*, it need not reach Defendants' arguments that they did not owe Plaintiffs a duty to safeguard their emotional wellbeing, that they did not breach the standard of care, and that emotional damages are unrecoverable. *See* Motion at 15–20.